IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VOLVO CAR CORPORATION, *et al.*,

          Plaintiffs,

   v.

THE UNINCORPORATED
ASSOCIATIONS IDENTIFIED IN
SCHDULE A,

          Defendants.

Civil No. 1:18-cv-00977-LO-MSN

## **REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiffs Volvo Car Corporation's ("Volvo Car")

and Volvo Trademark Holding AB's ("Volvo Trademark Holding") (collectively, "plaintiffs")

Motion for Entry of Default Judgment (Dkt. No. 72). Having reviewed the record and the

pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiffs'

favor for the reasons that follow.

## I.   **Procedural Background**

On August 7, 2018, plaintiffs filed a Complaint against the Unincorporated Associations

Identified in Schedule A to the Complaint (collectively, "defendants") alleging various claims of

trademark infringement based on defendants' unauthorized use of counterfeit imitations of

plaintiffs' federally-registered trademarks in connection with the sale, offering for sale,

distribution, and/or advertising of infringing goods (Dkt. No. 1). Specifically, the Complaint

alleges three counts against defendants, including: Trademark Infringement and Counterfeiting

under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for "selling, offering to sell, marketing,

distributing, and advertising products using counterfeit reproductions" of plaintiffs' trademarks without plaintiffs' permission," Compl. (Dkt. No. 1) ¶¶ 32-38; False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for "promoting, marketing, offering for sale, and sale" of counterfeit reproductions of plaintiffs' trademarks that created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with plaintiffs or the origin, sponsorship, or approval of defendants' counterfeit products, *id.* at ¶¶ 39-43; and Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c), for willfully and intentionally using plaintiffs' trademarks in connection with the advertisement, promotion, and sale of defendants' products, *id.* at ¶¶ 44-53.

In the Complaint, plaintiffs seek the following relief: an order temporarily, preliminarily, and permanently enjoining and restraining defendants from engaging in their alleged unlawful conduct, *id.* at A; an order requiring third-parties in privity with defendants—including online marketplace platforms, web hosts, sponsored search engines or ad-word providers, credit cards, banks, merchant account providers, payment processing service providers, and internet search engines—to disable and cease providing services being used by defendants to engage in the sale of goods using plaintiffs' trademarks and displaying any advertisements used by defendants in connection with the sale of counterfeit and infringing goods using plaintiffs' trademarks, *id.* at B; an order requiring defendants to account for, or to pay plaintiffs, all profits realized by defendants arising from their unlawful conduct and that the amount of damages for infringing plaintiffs' trademarks be increased by a sum not exceeding three times the amount as provided under 15 U.S.C. § 1117, *id.* at C; in the alternative, an award of statutory damages for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) of $2,000,000.00 for each and every use of plaintiffs' trademarks and $4,000,000.00 for those defendants that sell counterfeit goods, *id.* at D; and an

award for reasonable attorneys' fees and costs, *id.* at E, among other relief the Court deems just and proper, *id.* at F.

On August 8, 2019, plaintiffs filed a Motion for Order Authorizing Service of Process By Email because plaintiffs were unable to determine defendants' identities and actual physical locations due to defendants actively concealing their real identities and physical addresses (Dkt. No. 14); however, plaintiffs verified that defendants conduct foreign business via known email addresses and requested to serve defendants via those email addresses, *id.* The Court granted plaintiffs' motion on August 31, 2018 (Dkt. No. 26). On October 19, 2018, plaintiffs filed a Notice of Service of Defendants by Email stating that on October 17, 2018, plaintiffs emailed defendants a copy of the Verified Complaint, the individual defendant's summons, and the Court's August 31, 2018 Order to all defendants. Daniel S. Block Declr. (Dkt. No. 60) ¶¶ 4-5.[1]

On August 9, 2018, plaintiffs filed an *Ex Parte* Motion for Temporary Asset Restraint and Expedited Discovery requesting the Court to issue a Temporary Restraining Order ("TRO") freezing the assets of defendants' PayPal and AliPay accounts, restraining and enjoining the transfer of any monies held in such accounts, and to permit limited expedited discovery directed to PayPal, AliPay, and eBay to determine defendants' identity, the amount and location of the profits of defendants' counterfeiting and infringement, and the scope of defendants' activities (Dkt. No. 11). The Court granted plaintiffs' motion on August 31, 2018 (Dkt. Nos. 25).[2] On September 11, 2018, plaintiffs filed an *Ex Parte* Motion to Extend the Temporary Restraining Order until September 28, 2018 because AliPay had failed to freeze any of defendants' accounts, but was

---

[1]    Plaintiffs previously stated that they were not able to effectuate service by email to the following defendants: Shop3109041 Store; Decoration My Car Store; and Car Accessories A Store. Daniel S. Block Declr. (Dkt. No. 60) ¶ 5. However, these defendants were later dismissed on November 27, 2018 (Dkt. No. 70).
[2]    On September 18, 2018, the Court issued a Memorandum Opinion granting plaintiffs' *Ex Parte* Motion for Temporary Asset Restraint and Expedited Discovery (Dkt. No. 34).

working diligently to effectuate the TRO (Dkt. No. 27). The Court granted the motion on September 12, 2018 (Dkt. No. 33). On September 26, 2018, plaintiffs moved for a Second *Ex Parte* Motion to Extend the Temporary Restraining Order until October 5, 2018 because AliPay still had not completed effectuating the TRO (Dkt. No. 37), which the Court granted on September 27, 2018 (Dkt. No. 41). On October 4, 2018, plaintiffs filed an Entry of a Preliminary Injunction seeking to freeze defendants' PayPal and Alipay accounts and to restrain and enjoin those accounts from transferring monies (Dkt. No. 42), which the Court granted that same day (Dkt. No. 49).

On October 12, 2018, plaintiffs filed a Notice of Dismissal Under Rule 41(a)(1) seeking to dismiss the following defendants without prejudice: dkyang0753; fuwangwang105; manzhi881; shengyihonghonghuohuo17; xinlong199; xiyouji002; yypbws; gadgetsstorenet; sunnysportsfun; shinianzhien-5; fengguang2015; and nastyaangel24_7 (Dkt. No. 52). The Court granted the notice that same day (Dkt. No. 54). On October 26, 2018, plaintiffs filed a Notice of Agreed Stipulated Dismissal with Prejudice as to Certain Defendants because the following defendants agreed to terms and conditions representing a negotiated settlement of this action: andy.vipseller; kakeymall; surefa.yang; Tingtingonlinestore/jingcairensheng; tyskyacc; betterdeal2015; sprjiji_3; x_autoparts; and global_drive (Dkt. No. 62). The Court granted plaintiffs' notice on October 29, 2018 (Dkt No. 64). On November 26, 2018, plaintiffs filed a second Notice of Dismissal Under Rule 41(a)(1) seeking to dismiss the following defendants without prejudice: Shop3109041 Store; Decoration My Car Store; and Car Accessories A Store (Dkt. No. 66). The Court granted this notice on November 27, 2018 (Dkt. No. 70).[3]

On November 26, 2018, plaintiffs filed a Request for Clerk's Entry of Default (Dkt. No. 67), which the Clerk of Court entered on November 27, 2018 (Dkt. No. 69). On December 3, 2018,

---

[3]     Additionally, defendant Weizu Wang filed letters responding to the Complaint and providing information to effectuate service (Dkt. Nos. 35 and 58).

plaintiffs filed a Motion for Entry of Default Judgment (Dkt. No. 72), along with a Memorandum in Support of Plaintiffs' Motion for Entry of Default Judgment (Dkt. No. 73) and Notice of Hearing for December 14, 2018 (Dkt. No. 74), against the remaining defendants.[4] *See* Appendix A (listing defendants). Specifically, plaintiffs seek an order permanently enjoining defendants from making, using, selling or offering for sale unauthorized products containing plaintiffs' trademarks, Pls. Proposed Order (Dkt. No. 72-1) 1; a monetary judgment of $4,000,00.00[5] for infringing plaintiffs' trademarks, *id.*; an order requiring PayPal and Alipay to release plaintiffs' monies currently restrained in defendants' financial accounts as partial payment of the monetary judgment, *id.* at 1-2; and an order that until plaintiffs have recovered full payments of the monetary judgment, plaintiffs shall have an ongoing authority to serve a court order on PayPal or Alipay in the event that any new accounts controlled or operated by defendants are opened, among other instructions *id.* at 2. On December 14, 2018, counsel for plaintiffs appeared at the hearing on plaintiffs' Motion for Entry of Default Judgment before the undersigned and no claimant appeared on behalf of defendants (Dkt. No. 76). Accordingly, the motion is ripe for disposition.

---

[4]      Plaintiffs argue that defendants are properly joined under the federal rules. Fed. R. Civ. P. 20 states that joinder of defendants is proper when the plaintiff seeks relief "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences" and that "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A). Plaintiffs allege in the Complaint that defendants "act[ed] in concert to make and distribute the Counterfeit Volvo Car[] Products to the United States. These tactics include similar pricing structures, similar descriptions of the Counterfeit Volvo Car[] Products, and similar payment methods." Compl. (Dkt. No. 1) ¶ 22. For example, all defendants are located in China, *id.* at ¶ 17; all defendants operate nearly identical internet stores that offer for sale and sell counterfeit Volvo Car Products, *id.* at ¶ 18; all defendants generally utilize the same or similar images of the infringing products in their listings offering for sale the counterfeit Volvo Car Products, Compl., Ex. 2 (Dkt. Nos. 9, 9-1, 9-2) 1-316, 1-190, 1-191; and all defendants advertise nearly identical infringing products on their store's websites, *id.* Moreover, because plaintiffs allege the same causes of action against all of defendants, the same operative law, the Lanham Act, applies. Pls. Br. (Dkt. No. 73) 13. Plaintiffs are correct that defendants are properly joined in the instant action.

[5]      Although plaintiffs seek an award of $4,000,000.00 in statutory damages in their Memorandum in Support of Plaintiffs' Motion for Entry of Default Judgment (Dkt. No. 73), plaintiffs initially sought "a monetary judgment of $2,000,000," Pls. Proposed Order (Dkt. No. 72-1) 1.

## II.    Factual Background

Volvo Car and Volvo Trademark Holding are corporations organized under Swedish law and have principal places of business in Gothenburg, Sweden. Compl. (Dkt. No. 1) ¶¶ 5-6. Volvo Car is a world-famous automobile manufacturer that sells Volvo automobiles, genuine parts, and accessories (the "Volvo Car Products") through a network of licensed Volvo Car dealerships throughout the United States. *Id.* at ¶ 8. The Volvo brand is one of the most well-recognized brands in the world. *Id.* at ¶ 9. For example, consumers have long associated the Volvo brand with "automobile safety" as evidenced in Consumer Reports that stated that "the Volvo brand is the 'single, clear choice' for consumers that care about safety in automobiles, and that it 'will be a challenge for [competing] automakers to close the gap with Volvo' to change perceptions of consumers with respect to Volvo brand and safety." *Id.* Moreover, Brand Finance, a global brand valuation consultancy, recently ranked Volvo in the top 500 brands globally. *Id.*

Plaintiffs are the owners of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise (the "Trademarks"). *Id.* at ¶ 10. The Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id.* at ¶ 11. Pursuant to an agreement with Volvo Trademark Holding, Volvo Car can "police and enforce" plaintiffs' trademarks in the United States. *Id.* at ¶ 7. Volvo Car incorporates these distinctive Trademarks in the design of its vehicles, vehicle parts, and vehicle accessories. *Id.* Plaintiffs' Trademarks "have been used exclusively and continuously by Volvo Car[] in relation to passenger cars and related goods and services for over 50 years, and have never been abandoned." *Id.* Volvo Car spends millions of dollars in advertising, promoting, and developing plaintiffs' Trademarks and Volvo Car's trade dress, including their distinctive and famous VOLVO Mark, throughout the world. *Id.* at ¶ 15. Due to such advertising expenditures and significant sales of Volvo

Car's products in the United States and internationally, plaintiffs' Trademarks have come to symbolize the brands' marketability, reputation, and goodwill. *Id.* at ¶¶ 11, 15.

Defendants are individuals and business entities who, on information and belief, reside in China. *Id.* at ¶ 17. Defendants have gone to great lengths to conceal their identities and often use multiple fictitious names, business names, and addresses to register and operate their network of internet stores. *Id.* at ¶¶ 18, 27. Defendants further attempt to conceal their identity by regularly creating new websites and online marketplace accounts on various platforms as well as other unknown fictitious names and addresses. *Id.* at ¶ 27. Defendants operate in online marketplaces, including eBay, Alibaba, and AliExpress, by selling thousands of counterfeit goods bearing plaintiffs' Trademarks at substantially lower prices than genuine Volvo Car Products. *Id.* at ¶¶ 12, 17. Many of defendants' counterfeit goods were stamped with genuine Volvo Car product numbers and the online listings stated the goods were intended to fit original Volvo Car automobiles. *Id.* at ¶ 20. In July 2018, plaintiffs reviewed the offerings from each of defendants' internet stores on eBay and AliExpress and confirmed that defendants were in fact selling counterfeit Volvo Car Products. *Id.* at ¶ 20, 24.

Defendants facilitate their sales by designing internet stores that appear to be authorized online retailers, outlet stores, or wholesalers. *Id.* at ¶ 25. Defendants "further perpetuate the illusion of legitimacy by purporting to offer 'customer service' and using indicia of authenticity and security that consumers have come to associate with retailers, including the Visa®, MasterCard®, AliPay®, and/or PayPal® logos." *Id.* Defendants also deceive consumers by using plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines looking for websites relevant to consumer searches for Volvo Car Products. *Id.* at ¶ 26. Moreover, defendants use plaintiffs' Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are

searching for Volvo Car Products. *Id.* Accordingly, defendants, without any authorization or license from plaintiffs, have knowingly and willfully used and continue to use plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit Volvo Car Products into the United States and over the internet. *Id.* at ¶ 30. Defendants' conduct is likely to "cause and has caused confusion, mistake, and deception by and among consumers and irreparably harming [p]laintiffs." *Id.* at ¶ 31.

## III.  Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal jurisdiction over a defaulting defendant before it can render a default judgment. The court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a)-(b) because this action arises under federal law, the Lanham Act. Because defendants' contacts to Virginia are also the basis for the civil action, specific personal jurisdiction is the appropriate standard. *See ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). In determining specific jurisdiction, courts consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* (internal citations omitted).

Defendants satisfy each of these factors to establish specific personal jurisdiction. First, defendants purposefully availed themselves of conducting business in Virginia by seeking to do business with Virginia's residents through operating one or more commercial internet stores in which Virginia residents can purchase counterfeit products, targeting sales towards Virginia residents by operating online stores that offer shipping to the state, and accepting payment in U.S. dollars. *See* Compl. (Dkt. No. 1) ¶ 4. Second, this civil action arises directly from defendants'

unauthorized and unlicensed sales of counterfeit products directed at Virginia. *Id.* at ¶¶ 23-24. Lastly, this Court's exercise of personal jurisdiction over defendants would be constitutionally reasonable. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (determining what is constitutionally reasonably by looking at the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most effective resolution of controversies). Based on the record, there is no burden on defendants to litigate in this court given that majority of them did not even respond to the Complaint. Moreover, this court has an interest in adjudicating the dispute because courts have a "valid interest in the resolution of the grievances of its citizens and businesses…." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 297 (4th Cir. 2009). Because defendants have engaged in such conduct towards this judicial district, venue is also proper pursuant to 28 U.S.C. § 1391.

Plaintiffs have properly effectuated service on defendants. On August 9, 2018 plaintiffs filed a Motion for Order Authorizing Service of Process By Email because plaintiffs verified that defendants conduct foreign business via known email addresses (Dkt. No. 14), which the Court granted on August 31, 2018 (Dkt. No. 26). On October 17, 2018, plaintiffs emailed defendants the Verified Complaint, the individual defendant's summons, and the Court's August 2018 Order in each service email. Daniel S. Block Declr. (Dkt. No. 60) ¶¶ 1-4. Plaintiffs believe that the emails were delivered to all defendants except for three, including Shop3109041 Store, Car Accessories A Store, and Decoration My Car Store, *id.* at ¶ 5, who were later dismissed from the action, *see* Dismissal (Dkt. No. 70) 1.

## IV.    Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because defendants have not answered or otherwise timely responded, the well-pleaded allegations of fact in the Complaint are deemed to be admitted.

## V.    Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the Complaint (Dkt. No. 1), supported by plaintiffs' Motion for Entry of Default Judgment (Dkt. No. 72) and Memorandum in Support of Plaintiffs' Motion for Entry of Default Judgment (Dkt. No. 73), establish that defendants violated Section 32 of the Lanham Act, 15 U.S.C. § 1114 and Section 43 of the Lanham Act, 15 U.S.C. §§ 1125(a), (c).

a.  Plaintiffs' Claims for Trademark Infringement and Counterfeiting (Count I)

Plaintiffs allege that defendants committed Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114, for "selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions" of plaintiffs' trademarks without plaintiffs' permission. Compl. (Dkt. No. 1) ¶¶ 32-38. To prove trademark infringement, plaintiffs must show "(1) that [they] own[] a valid and protectable mark; (2) that [defendants'] use[] a re-production, counterfeit, copy, or colorable imitation of that mark in commerce and without [plaintiffs'] consent; and (3) that [defendants'] use is likely to cause confusion." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007) (internal citations omitted).

First, plaintiffs are the owners of numerous federally-registered Trademarks for automobiles, parts, accessors, and a long list of related services and merchandise. Compl. (Dkt. No. 1) ¶ 10. Volvo Car incorporates these distinctive Trademarks in the design and the marketing of its vehicles, vehicle parts, vehicle accessories, and services. *Id.* Plaintiffs' Trademarks have been used exclusively and continuously by Volvo Car in relation to passenger cars and related goods and services for over 50 years and have never been abandoned. *Id.* at ¶ 11. Plaintiffs' registrations for their Trademarks are valid, subsisting, in full force and effect, and "many are incontestable pursuant to 15 U.S.C. § 1065." *Id.* The registrations of plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of plaintiffs' right to use the Trademarks pursuant to 15 U.S.C. § 1057(b). *Id.*

Second, defendants were selling counterfeits of plaintiffs' products in commerce without plaintiffs' consent. In the Complaint, plaintiffs allege that "[d]efendants were selling these counterfeit goods by the thousands, and the goods were priced at substantially lower prices than

genuine Volvo Car[] Products. Many of the goods appeared to be stamped with genuine Volvo Car[] product numbers, and the online listings stated the goods were intended to fit original car automobiles." Compl. (Dkt. No. 1) ¶ 20. In July 2018, plaintiffs inspected the offerings from each of defendants' internet stores to determine their authenticity and found that the products were "nothing more than cheap, low quality imitations of Volvo Car[] genuine products." *Id.* at ¶¶ 23-24. Moreover, plaintiffs have not licensed or authorized defendants to use any of their Trademarks and defendants are not authorized retailers of genuine Volvo Car products. *Id.* at ¶ 25.

Now that plaintiffs established that they own valid and protectable trademarks and that defendants produced counterfeit products without their consent, the last factor is whether defendants' use of plaintiffs' Trademarks is likely to cause confusion. The Fourth Circuit established a list of seven non-exclusive factors to consider when determining if a product creates a likelihood of confusion: "(1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984). These factors are not always weighed equally and not all factors are relevant in every case. *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006).

The *Pizzeria Uno* factors weigh in favor of finding that defendants' use of plaintiffs' Trademarks cause confusion. Under the first factor, plaintiffs' marks are inherently distinctive and famous. Volvo Car spends millions of dollars in advertising, promoting, and developing plaintiffs' Trademarks and Volvo Car's trade dress, which has resulted in plaintiffs' Trademarks being well-known and associated with the brand's marketability, reputation, and goodwill. Compl. (Dkt. No.

1) ¶¶ 9, 15. For example, consumers associate the Volvo brand with "automobile safety," as evidenced in Consumer Reports, and a global brand valuation consultancy recently ranked Volvo in the top 500 brands globally. *Id.* at ¶ 9. Under the second factor, defendants created exact replicas of plaintiffs' Trademarks to sell their counterfeit products. *Id.* at ¶¶ 24-25. Under the third factor, defendants' counterfeit products are intended as a replacement for genuine Volvo Car Products because many of defendants' products "appeared to be stamped with genuine Volvo Car[] product numbers" and the online listings stated that the goods were intended to fit original Volvo Car automobiles. *Id.* at ¶¶ 20, 24-25. Under the sixth factor, defendants' intent is to profit from the sale of counterfeit Volvo Car Products by purchasing the counterfeit goods at a cheap price and then selling them at a significantly lower price than genuine Volvo Car Products. *Id.* at ¶ 20. Additionally, defendants were selling these products by the thousands on internet marketplaces, such as eBay and AliExpress. *Id.* As plaintiffs correctly state, "[t]he only reasonable conclusion is that [defendants] are engaging in these activities to make a profit by undercutting the price of genuine parts." Pls. Br. (Dkt. No. 73) 17. Lastly, under the seventh factor, there is substantial evidence of consumer confusion. Simply based on the number and quantity of defendants' eBay auctions and AliExpress sales indicate that consumers mistakenly believe that they are purchasing genuine Volvo Car Products. *See* Compl., Ex. 2 (Dkt. Nos. 9, 9-1, 9-2) 1-316, 1-190, 1-191. Moreover, there are consumers comments indicating that consumers mistakenly believe that they are purchasing genuine Volvo Car Products. *See, e.g.*, Compl., Ex. 2 (Dkt. No. 9) 119 ("Awesome product it was exactly what I needed. They fit my Volvo perfectly.").[6]

Accordingly, the undersigned recommends a finding that defendants committed Trademark Infringement and Counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

---

[6]     Because defendants do not use similar facilities or advertising for their products, plaintiffs do not find the fourth or fifth factors relevant. Pls. Br. (Dkt. No. 73) 16 n.6.

b.  Plaintiffs' Claim for False Designation of Origin (Count II)

Plaintiffs further allege defendants committed False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), for "promoting, marketing, offering for sale, and sale of Counterfeit Volvo Car[] Products" that created a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with plaintiffs or the origin, sponsorship, or approval of defendants' counterfeit Volvo Car Products. Compl. (Dkt. No. 1) ¶¶ 39-43. A party is liable for false designation of origin if the use of the mark "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *See* 15 U.S.C. § 1225(a)(1)(A). The elements of a violation of this section are three-fold: "(1) the alleged violator must employ a false designation; (2) the false designation must deceive as to origin, ownership or sponsorship; and (3) the plaintiff must believe that 'he or she is or is likely to be damaged by such [an] act.'" *Am. Online v. IMS*, 24 F. Supp. 2d 548, 551 (E.D. Va. 1998).

As stated above, defendants have employed a false designation and the false designation is deceiving as to origin, ownership, or sponsorship. Moreover, the false designation is likely to cause damage to plaintiffs because defendants' "use of [p]laintiffs' Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Volvo Car[] Products, including the sale of Counterfeit Volvo Car[] Products in the United States, including Virginia, is likely to cause and has caused confusion, mistake, and deception by and among consumers" which has caused irreparable harm to plaintiffs' reputation and the goodwill of the Volvo Car brand. Compl. (Dkt. No. 1) ¶¶ 31, 43.

Accordingly, the undersigned recommends a finding that defendants committed False Designation of Origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

14

c. <u>Plaintiffs' Claim for Trademark Dilution (Count III)</u>

Plaintiffs lastly allege defendants committed Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c), for willfully and intentionally using plaintiffs' Trademarks in connection with the advertisement, promotion, and sale of defendants' products. Compl. (Dkt. No. 1) ¶¶ 44-53. The Lanham Act provides that the owner of a famous, distinctive mark "shall be entitled to an injunction against another person" who uses the mark in a way "that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark…." 15 U.S.C. § 1125(c)(1). A party establishes a dilution claim by showing: "(1) the ownership of a distinctive mark; and (2) a likelihood of dilution." *Am. Online*, 24 F. Supp. 2d at 552 (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996)). As stated above, plaintiffs are the owners of the distinctive and famous Trademarks. "The distinctive trademarks of "[p]laintiffs symbolize the brand's marketability, reputation, and goodwill…Indeed, the Volvo brand is one of the most well-recognized brands in the world." Compl. (Dkt. No. 1) ¶ 9. Accordingly, there is a likelihood of dilution because defendants have been selling thousands of counterfeits of plaintiffs' products except using lower quality products. *Id.* at ¶¶ 24-25; *see also Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 154, 163 (2010) ("[Trademark] law thereby 'encourage[s] the production of quality products,'…and simultaneously discourages those who hope to sell inferior products by capitalizing on a consumer's inability to quickly evaluate the quality of an item offered for sale.").

Accordingly, the undersigned recommends a finding that defendants committed Trademark Dilution under Section 43 of the Lanham Act, 15 U.S.C. § 1125(c).

15

## VI.     Requested Relief

Plaintiffs seek three types of relief against defendants: statutory damages under the Lanham Act; post-judgment interest for the damages award; and permanent injunctive relief under the Lanham Act.[7] The undersigned considers each of plaintiffs' requests for relief in turn below.

### a.   Plaintiffs' Claim for Statutory Damages

Plaintiffs argue that they are entitled to $4,000,000.00 in statutory damages. Although a court must assume the well pleaded factual allegations in determining liability in a default judgment, that is not true with respect "to those relating to amount of damages." *JTH Tax, Inc. v.* Smith, 2006 WL 1982762, at *2 (E.D. Va. June 23, 2006). In all circumstances, "a default judgment may not exceed in amount that prayed for in the demand for judgment." *Id.* at *3 (citing to Fed. R. Civ. P. 54(c)). The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not have reasonably expected that his damages would exceed that amount. *See In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

As an alternative remedy to actual damages, a plaintiff may elect to recover an award of statutory damages. Under the Lanham Act, the court "has wide discretion to determine an appropriate award of statutory damages...." *Mya Saray, LLC v. Al-Amir*, 831 F. Supp. 2d 922, 941 (E.D. Va. 2011). For willful use of a counterfeit mark, the defendant may be assessed statutory damages of up to $2,000,000.00 per mark. 15 U.S.C. § 1117(c). "Infringement is willful if a defendant has knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Mya Saray*, 831 F. Supp. 2d at 941 (internal citations omitted).  Plaintiffs argue that

---

[7]     Although plaintiffs sought an award of attorney's fees and costs in the Complaint, Compl. (Dkt. No. 1) E, plaintiffs have not requested such an award in their Motion for Default Judgment or submitted an affidavit or declaration detailing their attorney's fees and costs.

because defendants willfully used plaintiffs' Trademarks to sell counterfeit goods, they are entitled to statutory damages of $2,000,000.00 per mark. Pls. Br. (Dkt. No. 73) 18-19.

Defendants willfully used counterfeit Volvo Car Products to make a profit. First, defendants created exact replicas of plaintiffs' Trademarks to sell thousands of their counterfeit products. Compl. (Dkt. No. 1) ¶ 20. Second, defendants' counterfeit products were intended as replacements for genuine Volvo Car Products because many of defendants' products were stamped with genuine Volvo Car Products' numbers and the online listings stated that they were intended to fit original Volvo Car automobiles. Compl. (Dkt. No. 1) ¶¶ 20, 24-25. Moreover, defendants intended to make a profit from their counterfeit products by undercutting the price of genuine Volvo Car Products. Accordingly, the undersigned finds defendants' use of plaintiffs' Trademarks was willful.

The next issue is how many marks plaintiffs believe defendants infringed, entitling them to statutory damages for those marks. In the Complaint, plaintiffs list a "representative sample of the trademarks" implicated in the instant action, Compl. (Dkt. No. 1) ¶ 10, but fail to articulate which Trademarks are specifically being violated. In the prayer for relief, plaintiffs sought an award for "statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of [p]laintiffs' Trademarks, and $4,000,000 for those [d]efendants that sell Volvo Car[] [c]ounterfeit goods." *Id.* at D. In plaintiffs' briefing for its motion for default judgment, plaintiffs requested "an award of $2,000,000 for each mark infringed, or a total of $4,000,000," as part of its "ongoing efforts to combat trademark infringement" and "to deter other individuals or corporations from infringing" its marks. Pls. Br. (Dkt. No. 73) 19. Throughout the record, plaintiffs have failed to identify which specific marks defendants are infringing. Accordingly, the undersigned recommends a finding of $2,000,000.00 in statutory

damages for, at least, one counterfeit mark to repair the harm done to plaintiffs and to serve the goal to dissuade defendants and others from parking in such willful counterfeit use in the future.

b.   Post-Judgment Interest

Plaintiffs seek post-judgment interest pursuant to 28 U.S.C. § 1961(a).[8] The statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Although plaintiffs did not include a request for interest in the Complaint, "interest need not be specified in the complaint." *Acosta v. Lopez*, 2017 WL 6541463, at *4 (E.D. Va. Dec. 21, 2017). The undersigned finds an award of post-judgment interest is appropriate in this action in order to ensure that plaintiffs receive the proper value of the damages awarded against defendants. The post-judgment interest is to be calculated in accordance with 28 U.S.C. § 1961.

c.   Injunctive Relief under the Lanham Act

Lastly, plaintiffs seek a permanent injunction enjoining defendants from infringing or otherwise violating plaintiffs' registered trademark rights "so that they can take prompt action against any new online marketplace accounts or websites that are identified, found to be linking to [] [d]efendants, and selling counterfeit Volvo Car Products." Pls. Br. (Dkt. No. 73) 19. This Court previously granted plaintiffs' TRO finding that (1) "[p]laintiffs will be irreparably harmed absent a TRO because [d]efendants would have the incentive and capacity to transfer their assets from any accounts within the United States, depriving [p]laintiffs of the ability to obtain monetary relief"; (2) defendants "are unlikely to suffer any cognizable harm from the TRO as they would merely be prevented from profiting from past infringement and moving their funds beyond the reach of the Court"; (3) plaintiffs are likely to succeed on the merits; and (4) the public has an

---

[8]      In plaintiffs' motion, they only sought post-judgment interest under 28 U.S.C. § 1961, Pls. Mtn. (Dkt. No. 72) 5; however, in their briefing, they sought pre- and post-judgment interest, Pls. Br. (Dkt. No. 73) 22. Because plaintiffs have not clearly articulated their position with respect to pre-judgment interest, the undersigned cannot independently review plaintiffs' request.

interest in "the prohibition of trademark infringement [] to prevent consumer confusion and deception." Order (Dkt. No. 34) 1-5. For similar reasons, the undersigned finds that a permanent injunction is appropriate here.

Plaintiffs further seek an order requiring PayPal and AliPay to transfer to plaintiffs the assets currently held in defendants' accounts as partial payment of any award of damages. *Id.* at 20. "In the absence of such an order, it is likely that [p]laintiffs will be left without any effective means by which to collect from [d]efendants any monetary judgment entered by this Court." Pls. Br. (Dkt. No. 73). Accordingly, the undersigned finds such an order appropriate to allow plaintiffs to recover their monetary award.

## VII. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting plaintiffs' Motion for Entry of Default Judgment (Dkt. No. 72);

2) Permanently enjoining defendants from making, using, selling, or offering for sale unauthorized products containing the Volvo Trademarks;

3) Entering an award of $2,000,000.00 in statutory damages;

4) Entering an award of post-judgment interest on the damages award;

5) Ordering PayPal, Inc. to release to plaintiffs the monies currently restrained in defendants' financial accounts as partial payment of the above-identified damages within five (5) business days of the date of this Order;

6) Ordering AliPay US, Inc. and/or Ant Financial Services Group to release to plaintiffs the monies currently restrained in defendants' financial accounts as partial payment of the above-identified damages within five (5) business days of receipt of this Order; and

7) Ordering that, until plaintiffs have recovered full payments of monies owed to it by any defendants, plaintiffs shall have an ongoing authority to serve this Order on PayPal or AliPay in the event that any new PayPal or AliPay accounts controlled or operated by defendants are identified. Upon receipt of the Order, PayPal and AliPay shall within two (2) business days: locate all accounts and funds connected to defendants or defendants' internet stores; restrain and enjoin such accounts or funds that are not U.S. based from transferring or disposing of any money or other of defendants' assets; and release all monies restrained in defendants' PayPal and AliPay accounts to plaintiffs as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

## VIII.    Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to defendants at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

                                                            /s/
                                        _____
                                        Michael S. Nachmanoff
                                        United States Magistrate Judge

January 17, 2019
Alexandria, Virginia

**APPENDIX A**

| No. | Seller ID/Defendant Store Name | Defendant Email |
|---|---|---|
| 2 | aworldfactory | ultrasatisfyshop@hotmail.com |
| 5 | gt.inthebox | ebaygtinthebox@yahoo.com |
| 6 | gwtgfo | langedcb@126.com |
| 7 | hongyunzhijia2589 | chenfeidie7878@sina.com<br>chunyin7711@sina.com<br>tangfensu9877@hotmail.com |
| 8 | hotmotorpartaccessories0 | Hotmotorpartaccessories@hotmail.com |
| 9 | jack_hz | super734@qq.com<br>jack.hz@foxmail.com |
| 10 | jellcn0 | 2678417370@qq.com |
| 12 | lingyuelong-4 | lingyuelong@yahoo.com |
| 14 | Nanwubudongzunpusa / yongjipifa666 | hezheng998@hotmail.com<br>maqiaohong8897@sina.com<br>yangxiaoqin8791@sina.com<br>zhangyue78781@sina.com |
| 15 | natalexunited | natalex.euro@gmail.com |
| 16 | qfnh6261 | 15776495287@163.com |
| 19 | szzhida | szwt87@163.com |
| 22 | xiangpingfu476 | yuanyuan6588898@163.com |
| 23 | xiangzi0315 | 448567472@qq.com |
| 26 | yingjiata-0 | 18686878086@163.com |
| 28 | zengzhoushide1 / shishishunxin6969 | chenchenlanchen@sina.com<br>dfgsgcccx@sina.com<br>yanyanyanqy@outlook.com |
| 30 | kingdom126 | kingdom126eb@sina.com |
| 31 | airspeedcarparts | bmwparts68@gmail.com |
| 33 | g6rline | 445647488@qq.com |
| 36 | Liftsupportspro / autostore2016 | wangga0206@hotmail.com |
| 37 | luckysteven2011 | hcwlqf@hotmail.com<br>hcwlqf@gmail.com |
| 40 | wandelong | longtangsufang@hotmail.com<br>panyanting7878@sina.com<br>piaoshuai8800@sina.com<br>yangluzhu1177@sina.com |
| 42 | aaacarworld | 1053087745@qq.com |
| 43 | kanayu2008 | yangyangjk99@163.com |
| 44 | 2018caiyuanguangjin | liran7711@sina.com<br>qinwang2233@hotmail.com<br>wang8800hong@hotmail.com<br>xiaoxiang2255@hotmail.com<br>liliangliang7781@sina.com<br>wubing33320@sina.com |
| 45 | hongloumeng001 | kr_keji@hotmail.com |
| 46 | nianyu158 | lidaian2546@126.com |
| 47 | caishendaowojia1818 | haoyunhaoyunk8@outlook.com<br>shiwanshiruyi2019@hotmail.com<br>zzhangzhangbing@sina.com |
| 48 | caishenyejiadao188 | caizhen6611@sina.com<br>caocao6931@sina.com |

| No. | Seller ID/Defendant Store Name | Defendant Email |
|---|---|---|
| | | wuying2277@sina.com<br>zhangsuhong8787@sina.com<br>xiajinrui2299@sina.com |
| 49 | gorgeous-1688 | yolanda2018@foxmail.com |
| 50 | guanhk0 | qiuti99952@163.com |
| 51 | happyshopping58 | yolanda19911026@sina.com |
| 52 | nanwubudongzhunpusa0101 | jiaofei3366@hotmail.com<br>linling3399@hotmail.com<br>maqian6677@hotmail.com<br>zhangxiao77119@sina.com |
| 53 | nanwuzhuntipusa5151 | tangchun6611@hotmail.com<br>lianxihe7878@outlook.com<br>chunxiangxie158@sina.com<br>caottguo001@sina.com<br>zhouxiaoqiang633@sina.com<br>xiangwenting8787@sina.com<br>zhangxiquan7788@sina.com<br>lianxihe7788@sina.com |
| 54 | hongyundafa2018 | liuwei7788@hotmail.com<br>liangyanyi7788@sina.com<br>liqun9977@sina.com<br>fujiao9988@hotmail.com<br>liangyanyi8811@outlook.com<br>xingbin6600@hotmail.com |
| 56 | 4959311 | ty1640775967@163.com |
| 57 | alexandederbene_0 | daukintislinas@gmail.com |
| 58 | yueqin1989 / yu910617 | song18620789004@126.com |
| 59 | yudan1989 | 18502021030m0@sina.cn |
| 62 | power-of-change | ajanjoepairuch@gmail.com<br>joekabank@yahoo.com |
| 64 | Phonewillcom | san.der@list.ru |
| 66 | tuopinzhifu5199 | liutaiqin9696@sina.com |
| 69 | yimaautotrims2016 | autotrimtop@163.com |
| 71 | Car Emblem Hub Store | bohui988@163.com |
| 72 | Car hub shop Store | 1969495907@qq.com |
| 73 | Hente 02 Store | hente668@163.com |
| 74 | Leono Store | bohui663@163.com |
| 75 | OTOKIT Tuning Store | stephen2529@sina.cn |
| 77 | YANF Professional Car Light Store | yanfeid663@163.com |
| 78 | Yawlooc Official Store | 242367580@qq.com |
| 79 | DSYCAR Global Store | hwgo2015@163.com |
| 80 | LINGLUYANG Official Store | 1344209552@qq.com |
| 81 | WELLTYPE Car Accessories Store | szwt87@163.com |

| No. | Seller ID/Defendant Store Name | Defendant Email |
|---|---|---|
| 82 | EmartBoxPlus Store | emartboxplus@outlook.com |
| 83 | Car decoration factory | cn900628592@163.com |
| 84 | Shop2798006 Store | yuanmusmt@sina.com |
| 85 | DLR Car Accessories Store | beitauto@foxmail.com |
| 86 | LOMORO Store | lhart1013@163.com |
| 87 | LUDIJIA CAR Store | 15012551231@139.com |
| 88 | Shenzhen B&C Car Accessary Store | isabella_nie@163.com |
| 89 | Shop3618012 Store | xiaochenbadge@qq.com |
| 90 | trybest Store | 3503843782@qq.com |
| 91 | A XIAO RUO Store | 3430577193@qq.com |
| 92 | Shop1979010 Store Store | 2939219571@qq.com |
| 93 | STAROAD Official Store | globalworks@126.com |
| 94 | Yanteng Store | sam623923@163.com |
| 95 | Yszplay Store | ysz2668@163.com |
| 96 | Shop3660081 Store | 3325863241@qq.com |
| 97 | Yu hai automobile Store | 1769190461@qq.com |
| 98 | Zhijin Store | 428538683@qq.com |
| 99 | at first sight Store | lhm1165096106@163.com |
| 100 | Shop1971037 Store | jijialan_8888@126.com |
| 101 | Alv Store | 3583028908@qq.com |
| 102 | B&M Car Store | 253725119@qq.com |
| 103 | car shop Store | czdcp2017@sina.com |
| 104 | YiChen Auto Decoration Accessory Store | yinfeng198591@hotmail.com |
| 105 | Shop2906231 Store | zgh645425416@hotmail.com |
| 106 | E for car parts Store | autoparts0206@qq.com |
| 109 | linlinlili One More Car Store | 1712510009@qq.com |
| 110 | Shop2817026 Store | chennuow412@163.com |
| 111 | AutoSalon Store | smtwork@yeah.net |
| 112 | Lihuizhong Store | 2433401469@qq.com |
| 113 | shop3607022 Car motorcycle Accessories Store | kenkiguchi001@126.com |
| 114 | Shop3652086 Store | 2657264330@qq.com |
| 115 | shuanghuichai's Store | chanshh@163.com |
| 116 | 321GO Store | 17394082353@163.com |
| 117 | Shop3631187 Store Store | 3502838510@qq.com |
| 118 | Shop 3248038 Store | haoyuenlai9988@163.com |
| 119 | Shop3218038 Store | wmyfc5188@163.com |
| 120 | Jun Xi Store | 3316773248@qq.com |
| 121 | Tao Ju Store | 2193056142@qq.com |
| 122 | Xing Guang Store | 2978271871@qq.com |
| 123 | YaYi Store | 3056034637@qq.com |